*REDACTED VERSION*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| KANEKA CORPORATION, a Japanese corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>JBS HAIR, INC., UNO & COMPANY, LTD., and JINNY BEAUTY SUPPLY COMPANY, INC.,<br><br>  Defendants. | Civil Action No. 3:10-cv-1430-P |

**KANEKA CORPORATION'S OPPOSITION TO DEFEDANTS' MOTION TO COMPEL
RESPONSES TO INTERROGATORIES FROM PLAINTIFF [Dkt. 169]**

Plaintiff Kaneka Corporation hereby opposes Defendants JBS Hair Inc., UNO & Company Ltd, and Jinny Beauty Supply Company's (collectively, "Defendants") Motion to Compel [Dkt. 169].

I.  **INTRODUCTION**

Although Defendants' Motion begins with a sweeping accusation of delayed discovery responses by Plaintiff, only three of the 24 Interrogatories and none of the 172 Requests for Production remain unanswered at the end of a long discovery period which has been extended on several occasions by mutual agreement. Defendants also fail to mention that the late completion of discovery was occasioned by the delay in the availability of Defendants' witnesses and the late disclosure by Defendants of the identity of a large number of accused products.

Despite the delays and the short time frame remaining when current counsel inherited this case from the Adli law firm, Plaintiff's counsel worked diligently with Defendants' counsel to address the issues raised by the Defendants with respect to discovery responses. Yet, Defendants still filed the present motion, even though Kaneka delivered on all of the requested supplementations. Defendants' improper filing of the present motion is reflected in their failure to disclose communications between counsel after Kaneka served the promised interrogatory supplements. Indeed, Kaneka's final email to Defendants' counsel regarding the interrogatories at issue in this motion went unanswered.

Defendants' allegations of discovery deficiencies lack merit. The interrogatories at issue are contention interrogatories seeking a description of Plaintiff's basis for the assertion of indirect infringement (19 and 20) and a request for a description of best mode (24), which is not Plaintiff's burden. Kaneka's supplementation with respect to indirect infringement discloses the network of manufacturers, importers, and retailers that sell the accused product, and further identifies the individuals at UNO that had knowledge of the claimed invention. Kaneka's

1

supplementation with respect to best mode cited to portions of the asserted patents that describe how the claimed invention can be made and also references the fact that the inventors were deposed and provided testimony about best mode to the extent it was sought by Defendants' counsel.

In all, Kaneka's supplements provide full and sufficient responses to disclose and support Plaintiff's theory of inducement; nevertheless, Defendants seek the unreasonable pursuit of information regarding "each and every" instance of infringement. Because detailing each and every sale of tens of thousands of accused products is a needless waste of the parties' and the Court's resources, Defendant's motion to compel should be dismissed in its entirety.

## II.   STATEMENT OF FACTS

Defendants' Third Set of Interrogatories to Kaneka was served on April 20, 2012. Answers to these Interrogatories were served on July 27, 2012. By August 2, 2012, Defendants' counsel requested supplementation of interrogatories 5, 6, 7, 8, 10, 17, 19, 20, 22, 23 and 24, as well as Jinny and JBS Interrogatories 1 and 2. Current counsel for Plaintiff initiated a personal dialog on August 21st with counsel for Defendants to discuss the further supplementation of interrogatory responses. Following this discussion between counsel, second supplemental responses were served on August 27, 2012 addressing each and every deficiency raised by Defendants' counsel. Of the 14 Interrogatories identified by Defendants as in need of supplementation, only three remain in this motion after Kaneka's second supplemental response.

During this time, fact discovery remained ongoing, including eight depositions of Defendants and at least five depositions of Kaneka concluding on August 31, 2012 by joint agreement of the parties.

Plaintiff provided full and complete interrogatory supplementations prior to the end of August, in line with the ongoing discovery. Indeed, Defendants themselves continued to produce

documents as late as September 12, 2012 – a full twelve days after filing the motion to compel. (Ex. A.)  Discovery was hardly over in August, as asserted by Defendants.

With respect to Defendants' purportedly ignored August 5, 2012 email directed to Ms. Christensen, it should be noted that none of the interrogatories for which supplementation was requested in that email (i.e., Nos. 4-8, 10) overlap with the interrogatories at issue in this motion (Nos. 19-20, 24).  (Defs. Ex. 6.)[1]  Any deficiencies alleged in the August 5, 2012 email have been resolved by the supplementations promised and delivered on August 24 and 27th by Kaneka's current counsel.[2]   (Defs. Ex. 8.)  Plaintiff's counsel has acted diligently in reviewing the extensive materials produced by both parties, conducting on-going discovery, including depositions and providing supplemental and further supplemental responses to interrogatories.

In contrast to the actual events described above, Defendants' description of the facts and circumstances leading to the present motion is incomplete, and omits the fact that Plaintiff supplemented 11 out of 14 interrogatories to the satisfaction of Defendants.   Further, after Kaneka finished providing a full second supplementation of the disputed interrogatories on August 27, 2012, Defendants sent Kaneka an email on the evening of August 28, 2012 alleging continuing deficiencies with respect to Defendants' Interrogatory Nos. 19, 20, 24, and 10.  (Ex. B.)   In particular, Defendants demanded Kaneka to provide descriptions exceeding the scope of the interrogatories, seeking  "each instance of direct infringement . . . identified by . . .entity, date, and description of the infringing activity," as well as all "acts . . . that constitute inducement" (*Id.*)[3] and alleged that no substantive response were provided in response to Defendants'

---

[1]  "Defs. Ex. ___" refers to exhibits filed by Defendants with their moving papers for this motion to compel.
[2]  Ms. Christensen is no longer an attorney with DNL Zito, and is no longer representing Kaneka [Dkt. 174]
[3]  None of this language "each instance of . . ." and "entity, date and description . . ." is found in Interrogatories 19 and 20

Interrogatory No. 24, despite the fact that column and line citations of best mode were provided in the supplemental responses. (*Id.*)

On the morning of August 30, 2012, Kaneka responded to Defendants' email, noting that Defendants' position with respect to the disputed interrogatories was unrealistic. (Ex. C). Particularly with respect to Interrogatories Nos. 19 and 20 (indirect infringement), Kaneka noted that "[w]e cannot possibly detail every wig purchaser nor detail their use." (*Id.*) With respect to the Interrogatory No. 24 (best mode), Kaneka noted that the Defendants have no basis for moving to compel since it is their responsibility to ask the inventors of the patents-in-suit for the responsive information. (*Id.*)

Defendants filed the present motion two days later without addressing Kaneka's August 30, 2012 email and thus failed to meet and confer as required by the Local Rules.[4]

### III. LEGAL STANDARD

#### A. Inducing Infringement

Interrogatories 19 and 20 are contention interrogatories and, as such, "involve an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(c). As noted in the rule itself, courts have discretion over when these interrogatories are to be answered, and they typically "need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time." (*Id.*) This is because information responsive to contention interrogatories is typically uncovered as a matter of course during the discovery process. Because these contention interrogatories specifically request identification of "inducement to infringe" they are completely dependent on the activities of Defendants and thus

---

[4] Kaneka believes its responses to Defendants' interrogatory were fully answered under the Federal Rules as of the August 27, 2012 supplement. Nevertheless, Kaneka served further supplemental responses to Defendants' Interrogatories Nos. 3, 19, and 20 on September 20, 2012, which attempts to provide further detail in response to Defendants' overbroad requests. (Ex. H).

rely on information produced by Defendants and information obtained from Defendants' 30(b)(6) witness and third-party witnesses at deposition. Kaneka identified this information as it was contained in the documents and testimony provided by Defendants.[5] Kaneka's response named the direct infringers and described how Defendants' fibers were sold to manufacturers of the accused products sold in the United States. Plaintiff has identified the documents and testimony that demonstrate that Defendants possess knowledge of the patents in suit and that UNO fibers are used in the infringing wigs sold in the United States. This is the standard required to prove inducement, yet Defendants seek more.

Although an interrogatory may ask for the material or principal facts which support a party's contentions in the case, it is improper to require narratives that describe "each and every fact and application of law to fact . . . [which] would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details." *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998); *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000). Likewise, instances of direct infringement may be proven by circumstantial evidence. *See Static Control Components, Inc. v. Lexmark International, Inc.*, 487 F.Supp.2d 891, 893-94 (E.D. Ky. 2007).

Indeed, even though contention interrogatories are generally permitted, the party propounding them is not entitled to a narrative account of the opposing party's case. *See IBP*, 179 F.R.D. at 321. Contention interrogatories should be directed to a sufficiently narrow and specific topic to allow its answer without undue burden. *Id.* at 322; *Steil*, 197 F.R.D. at 447. Moreover, to the extent that a party seeks to obtain "every minute detail and narratives about the subject incident and every possible surrounding circumstance, written discovery is not the proper vehicle to obtain such detail." *IBP*, 179 F.R.D. at 321. Other discovery procedures, such as

---

[5] The majority of Defendants' documents are in a foreign language (primarily Korean) and need to be translated.

depositions and production of documents, may be more suitable for the uncovering of secondary detail." *Id.*

Further, Defendants are both overbroad and incomplete in their characterization and request of the facts needed to prove inducement infringement. Inducement liability is not limited by the fact that the accused goods at issue, artificial hair fibers, were initially shipped to extraterritorial third-party wig manufacturers prior to being sold into the United States. *See SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010). Moreover, the party inducing the infringement does not necessarily need to have actual knowledge of the patent, constructive knowledge is sufficient. *Id.* at 1376; *Instiuforms Techs. Inc. v. Car Contracting Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998); *cf. DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (emphasis added). As long as the accused infringer deliberately disregarded a known risk that the patent holder had a protective patent. liability for inducement infringement can be established. *SEB*, 594 F.3d at 1377. In this case, UNO not only knew of the patents in suit on the day they issued, July 20, 2010, UNO also knew of the pendency of the patents at least as early as 2006. (Ex. D.) In addition, UNO ███████████████████████████████ ████████████████████ in disregard for Kaneka's patent rights. (Ex. E.) The evidence of inducement is conclusive.

### B. Best Mode

Best mode is the best mode known to the inventors at the time of filing the patent application. As stated in the answer to interrogatory 24, the best mode is described in the specification of the patents. There is no testimony, documents or other evidence to the contrary and thus no further answer to Interrogatory 24.

Defendants' cursory discussion with respect to the law of best mode fails to even set forth the factual elements required for an invalidity analysis. To prove patent invalidity for

6

failure to disclose best mode, one must establish by clear and convincing evidence (1) that the inventor knew of a better mode of making or using the claimed invention than he disclosed in the specification and that (2) the inventor concealed the better mode. *Engle Industries, Inc. v. Lockformer Co.*, 946 F.23d 15238, 1531 (Fed. Cir. 1991). There can be no best mode violation if the inventors never contemplated one in the first place. *Hewlett Packard Co. v. Genrad, Inc.*, 897 F.Supp. 1479, 1497 (Fed. Cir. 1995).

The two-part inquiry described above is both subjective and objective: subjective in terms of whether the inventor knew of a mode of practicing the invention at the time of filing the application that he believed to be better than any other mode; and objective in terms of whether the inventor disclosed such best mode and did so adequately to enable one of ordinary skill in the art. *In re Hayes Microcomputer Products, Inc. Patent Litig.*, 982 F.2d 1527, 1536 (Fed. Cir. 1992); *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1049 (Fed. Cir. 1995). In other words, knowledge of a better mode cannot be imputed from other sources to the inventor. *Glaxo*, 52 F.3d at 1050-52.

Thus, the answer provided, that the best mode known to the inventors is described in the specification is completely dispositive of this issue.

## IV. ANALYSIS

### A. Kaneka Has Provided Full and Sufficient Supplemental Responses to Defendant's Interrogatories Nos. 19 and 20 that Set Forth UNO'S Knowledge of the Asserted Patents and Describes the Network of Manufacturers, Importers, and Retailers of the Accused Product.

As an initial matter, the duty to answer interrogatories fully does not equate to an obligation to disclose the entirety of Kaneka's indirect infringement case in narrative form. *See Bashkin v. San Diego County*, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011). Furthermore,

Defendants are incorrect in two respects with regards to their characterization of the facts needed to prove indirect patent infringement.

First, Defendants overreach in terms of the expansive scope demanded in interrogatory responses. The Defendants demand supplementation that describes, for example, "each instance of direct infringement," as well as the "description of the acts that purportedly induced each such instance of infringement." (Defs. Mot at 7.) Considering that each sale of the accused products in the United States technically qualifies as an act of direct infringement, the level of specificity being demanded by the Defendants is of the scope expressly disapproved by the *IBP* and *Steil* cases as overbroad and unduly burdensome. *IBP*, 179 F.R.D. at 321; *Steil*, 197 F.R.D. at 447. There are tens of thousands of wigs sold every year, and Kaneka cannot possibly describe each sale in narrative form. In addition, Kaneka does not allege, and it is not an element of inducement, that UNO directly induced each and every one of those sales. Inducement is the act of placing infringing products in the stream of commerce. In this instance, inducement can be shown by UNO's sale of the accused hair fibers to wig manufacturers for sale United States with knowledge of or complete disregard for Kaneka's patent rights. The fact that wigs are sold in the United States is the direct act of infringement. Inducement does not require that UNO individually or directly induce each seller to make each sale or a wig. Thus, Defendants' request is both overly burdensome and irrelevant.

In addition, under Defendants' interpretation of their Interrogatories Nos. 19 and 20, responsive information would extend to a significant number of third-party retailers and customers that are not parties to this action. Kaneka cannot be reasonably expected to provide information not within its possession, custody, or control.

Defendants are also incorrect in terms of the substantive information needed to prove indirect infringement. To establish liability for infringement, Kaneka is not required to show

that UNO directly shipped the accused products into the United States. *SEB*, 594 F.3d at 1375. In addition, Kaneka is not required to show actual knowledge of the asserted patents – inducement infringement can be proven as long as the facts support the conclusion that the Defendants deliberately disregarded a known risk that Kaneka had a protective patent on the hair fibers at issue.

With that understanding, Kaneka's August 27, 2012 supplemental responses to Defendants' Interrogatory Nos. 19 and 20 are sufficient in both substance and scope. Interrogatory No. 19 relates to the identification of the indirect infringers and acts of direct infringement. In response, Kaneka described the acts that constitute direct infringement for both the '429 and '430 Patents. (Ex. F.) Kaneka also identified UNO's primary wholesalers and retailers in the United States. (*Id*.) Most importantly, Kaneka identified a list of UNO's manufacturers and importers of the accused products, citing to documents produced by UNO and providing translations of the cited documents to accompany the interrogatory supplementation. Kaneka's supplement of Defendants' Interrogatory No. 19 sets forth details relating to UNO's manufacturing and distributing of the accused products into the United States sufficient to show both direct and inducement infringement by the Defendants.

Interrogatory No. 20 relates to the knowledge component of inducement. As discussed earlier, factual elements such as knowledge and intent are typically proven by testimonial evidence and/or inferred from circumstances if actual intent cannot be documented. Kaneka supplemented its response to provide the factual basis for its position, noting that both UNO's current senior manager Mr. Chang Young Kim and president Mr. Jeon-Cheon Kim were made aware of the claimed inventions through the receipt of earlier publications and counterparts of the asserted patents. UNO was also aware of the commercial embodiment of the invention being sold by Kaneka ███████████████████████████████████████. Despite being

9

provided with express notice of Kaneka's patent rights, UNO executives disregarded the notice and continued to manufacture and market the accused products to distributors with known sales in the United States. This is sufficient evidence to show that the asserted patents were knowingly induced under the applicable analytical framework.

Defendants' overbroad and unduly burdensome demand for additional interrogatory supplementations to Defendants' Interrogatories Nos. 19 and 20 is unwarranted. This is because Kaneka's August 27, 2012 supplement provided, in part, specific details relating to the network of parties that manufacture and sell the accused products in the United States, and identified the UNO personnel that knowingly induced the infringement.

### B. Kaneka Has Provided Citations to the Specification of the Patents-In-Suit In Response to Defendant Interrogatory No. 24 and Defendants Were Afforded an Opportunity to Investigate Their Best Mode Defense During Inventor Depositions

Kaneka's supplemental response to Interrogatory No. 24 provided specific column and line citations from the patent discussing how to manufacture the claimed patents through the spinning process. This was previously agreed upon as sufficient between the parties during the meet and confer process. Kaneka additionally noted in its answers, that the inventors of the asserted patents were made available for deposition. To the extent the Defendants sought to pursue a best mode invalidity defense and to elicit evidence of best mode that would contradict the patent specification, UNO was afforded the opportunity at depositions. (Zito Decl., ¶10.) No evidence of any known undisclosed best mode was found. Having failed to uncover any evidence for this defense, despite a full and fair opportunity, Defendants now insist on additional responses knowing that no additional evidence or answers exist. Defendants' position is baseless, and their opening motion provides no explanation (beyond a conclusory statement) as to how Kaneka's supplementation was deficient. (*See* Defs. Mot. at 8-9.)

Because the asserted patents in this case all involve product claims, the relevant best mode inquiry should be focused on whether the inventors contemplated a best mode for making the claimed hair fibers at issue and whether the best mode, if one was contemplated at all, was disclosed in the specification. As discussed earlier, this analysis requires inquiry in the subjective intent of the inventors of the patents-in-suit. *See Engle*, 946 F.3d at 1531. The appropriate tool for discovery on this detailed and subjective factual element is during the depositions of the inventors. *See IBP*, 179 F.R.D. at 321. Kaneka is not in a position to comment on the subjective frame of mind of the inventors at the time of invention and/or patenting through interrogatories, since knowledge of best mode cannot be imputed from Kaneka to the inventors. *See Glaxo*, 52 F.3d at 1051.

Moreover, Kaneka has provided specific citations from the patent specification that describe the process by which the claimed hair fibers are made. For example, one of the cited passages in the patent begins by noting that "[t]he flame retardant polyester fiber for artificial hair of the present invention can be produced by melt spinning," and goes on to detail the conditions and equipment used for melt spinning. (Ex. G.) Kaneka's supplement provided numerous other citations that describe the spinning process in detail. (*See e.g., id*. at 18:31-57; 23:1-15; and 25:24-32.) In spite of this, Defendants still allege that there has been no "substantive response" provided in response to their inquiry. Defendants have failed to make a plausible showing that Kaneka's interrogatory responses are deficient in any way.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Responses to Interrogatories from Plaintiff Kaneka Corporation should be denied. Defendants' request for attorneys' fees should also be denied, as Defendants' allegations of discovery deficiencies are meritless.

Dated: September 21, 2012

DNL ZITO

By:*/s/ Joseph J. Zito*
Joseph J. Zito (Texas Bar No. 410913DC)
Benjamin C. Deming (admitted *pro hac vice*)
Sonia S. Figueroa (admitted *pro hac vice*)
**DNL ZITO**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 400-3344
Facsimile: (213) 402-2476
Email: jzito@zitotlp.com
Email: bdeming@zitotlp.com
Email: sfigueroa@zitotlp.com


Alfonso G. Chan
Christopher L. Evans
**SHORE CHAN BRAGALONE &
DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, TX 75202
Telephone: (214) 593-9120
Facsimile: (214) 593-9111
Email: achan@shorechan.com
Email: cevans@shorechan.com

Attorneys For Plaintiff
KANEKA CORPORATION

*REDACTED VERSION*

## **CERTIFICATE OF SERVICE**

This is to certify that on September 21, 2012, a true and correct copy of the foregoing document was served on all counsel of record who are deemed to have consented to electronic service via the Court's electronic filing system.

/s/ *Joseph J. Zito*
Joseph J. Zito
