IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KANEKA CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 3:10-cv-01430-P |
| | § | |
| JBS HAIR, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Now before the Court are the Findings and Recommendation of the United States Magistrate Judge filed on June 14, 2012 and two Objections. (Doc. 157, Magis. Rec.) Plaintiff filed an Objection on June 28, 2012. (Doc. 161, Pl.'s Obj.) Defendants also filed an Objection on July 2, 2012. (Doc. 162, Defs.' Obj.) Defendants then filed a Response to Plaintiff's Objection on July 23, 2012. (Doc. 163, Defs.' Resp) After reviewing all relevant matters of record in this case, including the findings, conclusions, and recommendation of the United States Magistrate Judge and any objections thereto, in accordance with 28 U.S.C. § 636(b)(1), the Findings and Recommendation of the United States Magistrate Judge are correct and are adopted as the Findings and Conclusions of the Court. Therefore, the Court ADOPTS the Findings and Recommendation of the United States Magistrate Judge and DENIES both parties' Objections.

**I.   Background**

This case involves a hairy patent dispute over competing products used to make wigs, braids, and hair extensions. Plaintiff owns by assignment two related patents that claim a flame-retardant polyester fiber for artificial hair. (*See* Defs.' Cl. Constr. App. 56-78, 79-101) First, U.S. Patent No. 7,759,429 ("the '429 Patent") claims a fiber made from polyester and

brominated epoxy flame-retardant that resembles human hair. U.S. Patent No. 7,759,429 col.1 ll.17-33 (filed July 25, 2004) (issued July 20, 2010). Second, U.S. Patent No. 7,759,430 ("the '430 Patent") is a continuation-in-part of the '429 Patent and claims a hair product comprising the same flame-retardant fibers. U.S. Patent No. 7,759,430 col.29 1.14-col.30 l.2) (filed February 2, 2006) (issued July 20, 2010). Defendants manufacture and/or sell, *inter alia*, flame-retardant hair products under the trade name Natura. (2d Am. Compl. ¶¶ 10-11; Defs.' Obj. 1)

On July 20, 2010, Plaintiff filed suit alleging that Defendants' product Natura infringed the '429 and '430 Patents. (2d Am. Compl. ¶¶ 12-21) Defendants counterclaimed and sought declaratory judgment on the issues of non-infringement, invalidity, and unenforceability. (Defs.' Answers (Docs. 147-49) ¶¶ 60-77) The parties submitted briefs and responses for claim construction regarding Claims 1 and 6 of the '430 Patent. (Docs. 113, 115, 119, 121) On June 14, 2012, the United States Magistrate Judge issued his Findings and Recommendation. (Magis. Rec., Doc. 157) The parties now object.

## II. Applicable Law

### a. Standard of Review

Upon timely filing objections to a magistrate judge's findings and recommendation on patent claim construction, each party is entitled to *de novo* review of the objectionable portions of the report. *See* 28 U.S.C. § 636(b)(1)(C) (West 2012) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."); *see also Chih-Wen Chung v. Bed Bath & Beyond, Inc.*, No. EP-09-CA-330-FM, 2011 U.S. Dist. LEXIS 151104, at *4 (W.D. Tex. Dec. 20, 2011) (mem. op.) (applying *de novo* review to

claim construction). Under *de novo* review, "the district court has wide discretion to consider and reconsider the magistrate judge's recommendation," and the court may accept, reject, or modify the report, in whole or in part. *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998); *see also* § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."); Fed. R. Civ. P. 72(b) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

Each party's objections must specify the findings or recommendations it wishes the reviewing court to consider. *See* § 636(b)(1)(C) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."); *see also* Fed. R. Civ. P. 72(b)(2) ("A Party may serve and file specific, written objections to the proposed findings and recommendations."); *Habets v. Waste Mgmt., Inc.*, 363 F.3d 378, 381 (5th Cir. 2004). The court will not consider "frivolous, conclusive, or general objections." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc)); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

For those portions of the findings and recommendation that go without objection, the reviewing court applies a "clearly erroneous, abuse of discretion and contrary to law" standard of

review. *See United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) ("[T]he 'clearly erroneous, abuse of discretion and contrary to law' standard of review . . . is appropriate . . . where there has been no objection to the magistrate's ruling."). If those portions survive this standard of review, the court may adopt them without further explanation. *See Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983) ("Absent objection, we do not believe any explanation need be given before adopting the [magistrate judge's] report."); *accord Solis v. Malkani*, 638 F.3d 269, 274 (4th Cir. 2011); *cf. Habets*, 363 F.3d at 382 (rejecting Plaintiff's claim that the district court's order adopting the Magistrate Judge's report and recommendation was too abbreviated for a *de novo* review, where the magistrate provided a thorough analysis to support its recommendation, and stating that Plaintiff "fails to cite any pertinent case law that requires a district court to provide analysis when it adopts a magistrate's recommendation").

### b. Claim Construction

In patent infringement suits, a court must: (1) conduct claim construction, and (2) compare the allegedly infringing product to the claims. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed. Cir. 1992). A court decides claim construction as a matter of a law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 971 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Claim construction may involve both intrinsic and extrinsic evidence. *Id.* at 979-81.

In order of significance, intrinsic evidence includes: (1) the claim language itself, (2) the specification, and (3) the prosecution history. *Id.* at 979. When construing claims, a court reads a claim in view of the specification. *Id.* Importantly, a claim is not limited to preferred embodiments or specific examples as provided in the specification. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Nevertheless, a claim may not be

broadened beyond the scope supported by the specification. *Wang Lab., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999).

All other evidence, including but not limited to dictionaries and expert testimony, is considered extrinsic evidence. *Markman*, 52 F.3d at 979. Where claim meaning is apparent from intrinsic evidence, it is clear error to review extrinsic evidence. *Id.* at 981; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Claim terms are presumed to have their ordinary meaning unless unequivocally defined otherwise in the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1170 (2006). Ordinary meaning is what the term would mean to a person of ordinary skill in the art in question when reading the term in the context of the entire patent. *Id.* at 1313. Although terms can be used in different ways throughout a patent document, generally a term is assumed to have the same meaning. *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *see also Pitney Bowes, Inc. v. Hewlett-Packard, Co.*, 182 F.3d 1298, 1311 (Fed. Cir. 1999).

### III. Discussion

The parties seek claim construction of Claims 1 and 6 of the '430 Patent. (Magis. Rec. 4; Docs. 113, 115, 119, 121)

#### a. Claim 1 of the '430 Patent

Claim 1 states:

> A hair product comprising flame retardant polyester fiber and *60% or less of human hair*, the fiber comprising 100 parts of weight of (A) a polyster made of one or more of polyalkylene terephthalate or copolymer, which comprises polyalkylene terephthalate as a main component, and 5 to 30 parts of weight of (B) a brominated flame retardant . . . .

'430 Patent col.29 ll.14-20 (emphasis added). The disputed term is whether "60% or less of human hair" requires any human hair at all. (Magis. Rec. 5; Pl.'s Obj. 2-4) The Magistrate

Judge made findings and recommended that this term means: "60% or less—but more than 0%—of human hair." (Magis. Rec. 6-7) Plaintiff objects to this recommendation, arguing that: (1) the claim only maintains an upper limit and therefore leaves open the possibility of zero hair as a lower limit, and (2) the original limitation submitted to the United States Patent and Trademark Office ("the PTO") was not amended for the specific inclusion of human hair. (Pl.'s Obj. 2-4)

Reviewing the findings and recommendation in conjunction with the objections presented, the Court adopts the Magistrate Judge's recommendation that Claim 1 should be construed to mean "60% or less—but more than 0%—of human hair." (Magis. Rec. 10) In light of the plain language of Claim 1, the claim specifies human hair without any qualification beyond percentage. Furthermore, the prosecution history demonstrates that Claim 1 was originally drafted to read: "A flame retardant polyester fiber for artificial hair . . . ." (Magis. Rec. 5; Defs.' Resp. 7) Considering that the PTO rejected this original limitation, to bring back the capability for Claim 1 to encompass fibers without any proportion of human hair would be inapposite with the prosecution history. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."). Although Plaintiff urges that the claim established no rock bottom limit for human hair, these contentions would be persuasive *but for* the prosecution history and inclusive language directing those skilled in the art to use some quantity of human hair. (Pl.s' Obj. 2) Moreover, while Plaintiff stresses that the original claim does not render its interpretation of Claim 1 void, this argument falls prey to the

plain language of the claim terms and what language Plaintiff ultimately decided to give up in a *quid pro quo* exchange to obtain a United States patent. (*Id.* at 3-4)

In sum, the Court adopts the Findings and Recommendation of the United States Magistrate Judge regarding Claim 1 of the '430 Patent. Thus, Plaintiff's Objection is denied.

### b. Claim 6 of the '430 Patent

Claim 6 states:

> The hair product according to claim 2 or claim 3, wherein the projections on the fiber surface which obtained as *Rz ten point average roughness* have a range of 0.5 to 2.0 μm.

'430 Patent col.33 ll.1-3 (emphasis added). The dispute involving Claim 6 centers on the reference length for "Rz ten point average roughness." (Magis. Rec. 7; Defs.' Obj. 1) The Magistrate Judge made findings and recommended that this term means: "the sum of the respective heights of the five highest peaks from the average line and the respective depths of the five lowest troughs (or valleys) from the average line within a reference of 80 μm, divided by five." (Magis. Rec. 10) Defendants object on the grounds that: (1) the term is indefinite, and (2) extrinsic evidence teaches away from this construction. (Defs.' Obj. 2-13)

"Indefiniteness is a question of law." *Amgen Inc. v. F. Hoffmann-La Roche, Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009). It is proven only "where an accused infringer shows by *clear and convincing evidence* that a skilled artisan could not discern the boundaries of the claim" based on intrinsic evidence or knowledge in the relevant area of art. *Halliburton Energy Servs., Inc., v. M-ILLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) (emphasis added); *see also Energy Servs., Inc., v. M-ILLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). A term is not indefinite if "a person of ordinary skill in the art could determine the specific amount without undue experimentation." *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1383-84

(Fed. Cir. 2003). Conversely, a claim term is indefinite if the patent does not provide an "objective anchor" or "yardstick against which potential infringers may measure their activities." *Girafa.com v. IAC Search & Media, Inc.*, No. 07-787-SLR, 2009 U.S. Dist. LEXIS 88796, at *7 (D. Del. Sept. 25, 2009).

Claims are not indefinite "merely because they present a difficult task of claim construction"; they only succumb to indefiniteness if they are "insolubly ambiguous." *Halliburton*, 514 F.3d at 1249. To this end, claim construction "need not always purge every shred of ambiguity" because resolution of some line-drawing problems may be left to the trier of fact. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007). The specification may lift the cloud of ambiguity and provide a reference to find a claim sufficiently definite. *See, e.g., CardioFocus, Inc. v. Cardiogenesis Corp.*, 827 F. Supp. 2d 36, 44 (D. Mass. 2011) ("Here, the specification provides an express standard against which to measure 'low' . . . ."). Notably, as a legal effect akin to an atomic bomb in the patent world, indefiniteness invalidates the patent. *See Exxon Research & Eng'r Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) ("A decision holding a patent invalid for indefiniteness presents a question of law . . . .).

Reviewing the findings and recommendation in conjunction with the objections presented, the Court adopts the Magistrate Judge's recommendation that Claim 6 should be construed to mean "the sum of the respective heights of the five highest peaks from the average line and the respective depths of the five lowest troughs (or valleys) from the average line within a reference of 80 μm, divided by five." (Magis. Rec. 10) The specification explains that surface roughness is "measured using a laser microscope, calculated based on a calculating formula as defined in JIS B0601-1994 and evaluated by Rz (ten point roughness)." '430 Patent col.11 ll.59-67. From the claim construction briefings, the Magistrate Judge referenced the specification and

found a standard formula for calculating "Rz ten point average roughness" with a series of reference lengths for Rz (i.e., 0.08 mm, 0.24 mm, 0.8 mm, 2.5 mm, and 8 mm). (Magis. Rec. 8) In addition, the Magistrate considered a declaration by Dr. Martin I. Jacobs, an expert in polymer science and technology. (*Id.*) Explaining microscope technology in light of the specification, Dr. Jacobs stated, "By cross-referencing this prerequisite with the reference lengths listed in JIS B 0601 (1994), it should be clear to a person of ordinary skill in the art that the '430 Patent specifies a reference length of 0.08 mm (80 μm) to be used to determine Rz ten point average roughness." (*Id.* at 9 (quoting Pl.'s Cl. Contr. Resp. App. 49, ¶¶ 12-14))

Notwithstanding Defendants' arguments and contradictory expert opinions, Defendants fail to demonstrate by clear and convincing evidence that Claim 6 is indefinite as a matter of law. While Defendants argue that Plaintiff failed to identify any reference for determining Rz roughness, the record illustrates that one skilled in the art may reference the specification to arrive at Dr. Jacobs' opinion. (Defs.' Obj. 3, 7) Although Dr. Michael Ellison arrived at a different conclusion for the reference length, reasonable minds may differ on the exact meaning of terms and this dilemma in itself does not render a claim indefinite. (*Id.* at 4-5, 9-12) In short, the evidence is far from clear and convincing that the term is indefinite.

Beyond adopting the findings and recommendation as correct, there is considerable authority to decline ruling on indefiniteness until summary judgment. *Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-4883 (GEB), 2010 U.S. Dist. LEXIS 114615, at *6 (D.N.J. Oct. 27, 2010) ("This dispositive effect is more appropriately tackled at summary judgment."). Indeed, courts in similar positions have gone as far as to opine that rulings on indefiniteness are inappropriate at claim construction. *See, e.g., CSB-System Int'l v. Sap Am., Inc.*, No. 10-2156, 2011 U.S. Dist. LEXIS 83462, at *50 (E.D. Pa. July 27, 2011) ("Several well-settled principles,

however, tend to discourage rulings on indefiniteness at the *Markman* stage."); *Intergraph Hardware Techs. Co. v. Toshiba Corp.*, 508 F. Supp. 2d 752, 773 n.3 (N.D. Cal. 2007) ("[The] indefiniteness argument is inappropriate at the claim construction stage."); *Pharmastem Therapeutics, Inc. v. Viacell Inc.*, No. 02-148 GMS, 2003 U.S. Dist. LEXIS 877, at *2 n.1 (D. Del. Jan. 13, 2003) ("[T]he court will not address the defendants' indefiniteness argument at [the *Markman* stage]."). At bottom, *as Defendants fail to present an alternative meaning for Claim 6*, a bare indefiniteness assertion fails at this stage in the proceedings. To be sure, such a ruling does not preclude Defendants from raising this argument again at a later stage.

All told, the Court adopts the Findings and Recommendation of the United States Magistrate Judge regarding Claim 6 of the '430 Patent. Thus, Defendants' Objection is denied.

### IV. Conclusion

For the foregoing reasons, the Court ADOPTS the Findings and Recommendation of the United States Magistrate Judge. Therefore, under Claim 1, the term "60% or less of human hair" means "60% or less—but more than 0%—of human hair." In addition, under Claim 6, the term "Rz ten point average roughness" means "the sum of the respective heights of the five highest peaks from the average line and the respective depths of the five lowest troughs (or valleys) from the average line within a reference of 80 μm, divided by five." Accordingly, Plaintiff's Objection is DENIED and Defendants' Objection is DENIED.

**IT IS SO ORDERED.**

Signed this 31st day of October, 2012.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE